IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN WRIGHT,
      Petitioner,

vs.                                Case No.:  3:13cv339/MCR/EMT

MICHAEL D. CREWS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 16).  Petitioner filed a reply (doc. 21).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 16).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2009-CF-3178, with one count of attempted home invasion robbery with a firearm

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 16).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

(Count 1) and one count of shooting at, into, or within a building (Count 2) (Ex. B).  Following a jury trial, he was found guilty as charged (Exs. C, D, E).  On August 27, 2010, Petitioner was sentenced to fifteen (15) years of imprisonment on Count 1, with pre-sentence jail credit of 417 days, and a consecutive term of five (5) years of imprisonment on Count 2 (Exs. G, H).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D10-4799 (Exs. I, J).  The First DCA affirmed the judgment per curiam without written opinion on March 1, 2012, with the mandate issuing March 27, 2012 (Ex. L).  Wright v. State, 81 So. 3d 423 (Fla. 1st DCA 2012) (Table).  Petitioner did not seek further review.

On August 2, 2012, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M).  The state circuit court summarily denied the motion on December 11, 2012 (Ex. N).  Petitioner appealed the decision to the First DCA, Case No. 1D13-199 (Exs. O, P).  The First DCA affirmed the judgment per curiam without written opinion on March 19, 2013, with the mandate issuing May 13, 2013 (Ex. R).  Wright v. State, 110 So. 3d 904 (Fla. 1st DCA 2013) (Table).

Petitioner filed the instant federal habeas action on May 23, 2013 (doc. 1).  Respondent concedes that the petition is timely (doc. 16 at 4).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but

unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."].    The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* <u>Gill</u>, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS[3]

A.   <u>Ground Three:  "(I.A.C.) [sic] by failing to file motion for judgement [sic] of acquittal as to charged offense of attempted home invasion robbery as evidence was insufficient to sustain conviction."</u>

Petitioner asserts there was no evidence at trial that he or his accomplices planned or attempted to enter the victim's dwelling by force with intent to commit an armed robbery, or that

---

[3] For organizational purposes, the court will address Petitioner's claim concerning the sufficiency of the evidence first.

they knew at the time of the offense that the dwelling would be occupied (doc. 1 at 7–8).[4]  Petitioner argues the State failed to establish, under Florida law, that he went to the victim's home with the specific intent to commit a robbery of the occupant (*id.* at 8).  He contends defense counsel was ineffective for failing to file a motion for judgment of acquittal ("JOA") as to the offense of attempted home invasion robbery (*id.*).  He contends if counsel had filed a motion for JOA, there is a reasonable probability the trial court would have granted it, and at least the issue would have been preserved for direct appeal (*id.*).

Respondent contends the state court's adjudication of this claim was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 16 at 19–31).

      1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for

---

    [4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

    2.    Federal Review of State Court Decision

Petitioner raised this claim as Issue Three in his Rule 3.850 motion (Ex. M at 13–15).  In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal standard (Ex. N).  The court adjudicated the claim as follows:

> **<u>Ground Three</u>:  trial counsel made a deficient motion for judgment of acquittal.**
>
> Defendant claims that counsel should have argued in his motion for judgment of acquittal that the State had presented no evidence to support the element of intent required for a conviction of attempted home invasion robbery.  Defendant further claims that there was no evidence that the defendants planned or attempted to enter the home by force with intent to commit an armed robbery of the victim or that they knew at the time of the criminal offense the dwelling would be occupied.
>
> To properly allege such a claim, a defendant should state sufficient facts to show that "[he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial." <u>See Boykin v. State</u>, 725 So. 2d 1203 (Fla. 2d DCA 1999).  Where there is no showing that a motion for judgment of acquittal had a likelihood of success, such a claim is properly denied.  <u>See Rogers v. State</u>, 567 So. 2d 483 (Fla. 1st DCA 1990).
>
> Section 812.135, Florida Statutes, mandates in pertinent part that "'Home-invasion robbery' means any robbery that occurs when the offender enters a dwelling with the intent to commit a robbery, and does commit a robbery of the occupants therein."  Furthermore, "If in the course of committing the home-invasion

robbery the person carries a firearm or other deadly weapon, the person commits a felony of the first degree."

Although the testimony at trial did not specifically demonstrate that the defendants had planned to enter the victim's dwelling to rob him, it was clear that the defendants had planned and had attempted to break into the victim's house with the intent of stealing guns.[FN 5]  Even if counsel would have argued in his motion for judgment of acquittal[FN 6] that the State had failed to present any evidence that Defendant had the intent to rob the victim after gaining entry into the house, a charge of armed burglary of a dwelling would still have been appropriate.  Pursuant to section 810.02(2)(b), that offense is a first-degree felony, and accordingly an attempted armed burglary of a dwelling would be a second-degree felony. Attempted home-invasion robbery is also a second degree felony, and therefore, Defendant did not suffer any prejudice by being convicted of attempted home-invasion robbery as opposed to attempted armed burglary of a dwelling. Because Defendant was not prejudiced, his claim fails.

[FN 5:  reference to excerpts from trial transcript]

[FN 6:  Id. at pp. 103–04.  Counsel argued that the State had failed to present any evidence that Defendant was at the scene.  It would not have been a credible or effective strategy to also argue that Defendant merely had the intent to commit armed burglary rather than home-invasion robbery.]

(Ex. N).  Petitioner argued the issue on appeal to the First DCA (Ex. P).  The appellate court affirmed the lower court's decision without written opinion (Ex. R).

At the time of Petitioner's offense conduct, January 11, 2008, Florida law defined home-invasion robbery as follows:

(1)  "Home-invasion robbery" means any robbery that occurs when the offender enters a dwelling with the intent to commit a robbery, and does commit robbery of the occupants therein.

Fla. Stat. § 812.135(1).  Pertinent to the definition of home-invasion robbery, are the following definitions:

(1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
. . . .

(3)(a) An act shall be deemed "in the course of committing the robbery" if it occurs in an attempt to commit robbery or in flight after the attempt or commission.

(b) An act shall be deemed "in the course of the taking" if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.

Fla. Stat. § 812.13(1), (3).

Under Florida law, criminal attempt is defined, in relevant part:

(1) A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . . .

Fla. Stat. § 777.04(1).

At trial, Jamal Dixon testified he pleaded guilty to the same charges with which Petitioner was charged regarding an attempted home invasion robbery and shooting into a dwelling on January 11, 2008 (Ex. C at 84–85). Dixon testified that while he, Petitioner, Davanta Robinson, Darryl Leavens and Ralphael Caldwell were at his house, he, Petitioner and Leavens were involved in a conversation about "some gun that they got from some guy named Doug" (*id.* at 85–86). At some point, the five men decided to go to Doug's house to get the guns; all five of them knew of the plan and no one objected (*id.* at 86–87). With Petitioner driving his (Petitioner's) vehicle, all five of them traveled to Doug's house on Lillian Highway (*id.* at 87). On the way to the house, they talked about their plan (*id.*). Among them, it was decided that he (Jamal Dixon), Davanta Robinson and Ralphael Caldwell would go the back of the house, while Petitioner and Darryl Leavens would go to the front of the house (*id.* at 88). Dixon testified that while he was in the vehicle, he saw a rifle in the backseat and a taser in the console (*id.*). He testified the taser belonged to Petitioner (*id.*). Jamal Dixon further testified that when they arrived at Doug's house, they parked next door and proceeded to the house as planned (*id.* at 89–90). He testified Darryl Leavens took the gun with him to the front of the house with Petitioner (*id.* at 89). Dixon testified that while he, Robinson and Caldwell were at the back of the house, and he was "fumbling around with the window, pretty much waiting for something to happen," the victim fired a shot through the window from inside (*id.* at 89). He testified the three of them ran back to Petitioner's vehicle (*id.* at 89–90). Dixon testified he heard

shots being fired, but none of the men in his group of three fired any shots (*id.* at 90).  He testified he did not see Petitioner or Leavens shoot, but he opined that if a gun was fired, Darryl Leavens fired it (*id.* at 91).  Jamal Dixon testified that all of the men returned to the truck, and Petitioner drove them to his (Dixon's) house (*id.*).

Davanta Robinson testified he pleaded guilty to the same charges with which Petitioner was charged regarding an attempted home invasion robbery and shooting into a dwelling on January 11, 2008 (Ex. C at 92–93).  Robinson testified that while he, Raphael, Darryl, Petitioner and Jamal were together, Petitioner started talking about a plan and they decided to go to a house on Lillian Highway where there were some guns (*id.* at 93).  Robinson testified Petitioner drove them all to the house in his vehicle (*id.* at 93–94).  He testified that while in the vehicle, he saw a shotgun (*id.* at 94).  He also testified Petitioner gave him a taser (*id.*).  Upon arriving at Doug's house, they parked next door, and everyone got out of the vehicle (*id.* at 94–95).  Robinson testified that Darryl and Petitioner went to the front of the house, and he saw Petitioner carrying a long gun (*id.* at 95).  Robinson testified Jamal Dixon went to the back of the house, and he (Robinson) and Ralphael Caldwell stayed in a parking lot on the side of the house (*id.* at 98).  Robinson testified the homeowner fired a shot, and everyone ran toward Petitioner's vehicle (*id.*).  He testified he saw Petitioner fire two or three shots from the shotgun (*id.* at 95–96, 98).  Robinson admitted that during his first interview with law enforcement, he stated he went to the back of the house with Jamal Dixon and pulled Dixon out of the line of fire when the victim began shooting (*id.* at 99).

The homeowner/victim, Douglas Dixon, testified he lived at the house on Lillian Highway and was awakened around 12:30 a.m. by a knock at his front door (Ex. C at 63–64).  He testified he had a gun collection and a coin collection in the house (*id.* at 64).  The victim testified he went to the front door and noticed that the porch light was out; this caused him alarm because he had just replaced the bulb (*id.*).  The victim testified he went to his bedroom, looked out the window, and saw cars parked in an empty parking lot next door and someone with a "black light" in the trunk of one of the vehicles (*id.*).  The victim testified he went back to the living room and got his pistol; while doing this someone tried to come into the house through a bathroom window (*id.*).  The victim looked in the bathroom and saw the same "black light" shining in the window that he had seen in the trunk of the vehicle next door (*id.* at 65).  The victim fired a shot through the bathroom window

and then "[a] whole barrage of bullets started coming through [his] house" (*id.*).  The victim estimated that "[a]pproximately thirty" bullets were fired (*id.*).  The victim identified various photographs of his house that were admitted into evidence depicting damage from numerous bullets (Ex. C at 65–67; Ex. D).  Of this damage, the victim described the "back patio window" as having "a lot of small holes in it" (Ex. C at 65).

After responding to the scene, Deputy Carl Townsley conducted an exterior search of the house, noticing that the dome of the front porch light was laying in the yard and the bulb appeared to have been unscrewed (Ex. C at 72–73).  Townsley further testified that he observed bullet holes in windows on the exterior of the house "and on the backside of the house there was an attached Florida room" where on one side "there were several bullet holes, approximately 12 to 13" (*id.* at 73–74).  Townsley identified photographs of the scene that were admitted into evidence (Ex. C at 74–79; Ex. D).  Townsley further testified that during his search of the lot next door, he "found a bandanna and some shell casings" (Ex. C at 77–78; Ex. D).

Deputy Brian Munhollon testified that on that same day, approximately 15–16 hours after Douglas Dixon reported the incident, he stopped a vehicle carrying five individuals:  "Jamal Dixon, Davanta Robinson, Darryl Leavens, Ralphael Caldwell and John Wright" (Ex. C at 100–01).  Munhollon testified Petitioner was driving the vehicle, and during a search of Petitioner's person, Munhollon found "[a] handheld taser device, stun gun" (*id.* at 101).  Inside the vehicle, Munhollon noticed some bandannas (Ex. C at 101–02; Ex. D).

At the close of the State's case, defense counsel made a motion for judgment of acquittal, arguing there was no direct evidence that Petitioner shot the bullets into the victim's home, and there was no forensic evidence placing Petitioner at the scene (Ex. C at 103–04).  The trial court denied the motion as to both offenses (*id.* at 105).

"A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence."  Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974); *see also* Johnson v. State, 660 So. 2d 637, 642 (Fla. 1995) ("When evidence supports two conflicting theories, this court's duty is to review the record in the light most favorable to the prevailing party.").

From the trial evidence and all inferences therefrom, viewed in the light most favorable to the State, any rational trier of fact could have found that all of the participants knew or expected the dwelling to be occupied, and intended to make entry with the intent to commit a robbery.  Jamal Dixon and Davanta Robinson testified that the five men planned and attempted to break into the victim's house with the intent of taking guns.  The jury could reasonably infer that the men knew that the house was occupied, or expected it would be occupied, from Robinson's testimony that Petitioner gave him a taser, and Dixon's and Robinson's testimony that Petitioner or Leavens took the shotgun.  The jury could also reasonably infer that the purpose of the bandannas was to conceal identity, and that there would have been no purpose for the bandannas unless the participants knew the house was occupied, or expected it would be.  In light of the evidence adduced at trial and all reasonable inferences the jury could draw from the evidence, Petitioner failed to demonstrate that defense counsel's motion for JOA was incompetently argued.[5]

Petitioner additionally failed to demonstrate a reasonable probability the trial court would have granted the motion for JOA if counsel had specifically argued there was no evidence of intent to rob anyone or knowledge that the house was occupied.  The state court determined that under Florida law, even if defense counsel had argued in his motion for JOA that the State failed to present any evidence that Petitioner intended to rob the victim after gaining entry into the house, or knew that the house was occupied, the evidence was sufficient to survive a motion for JOA on a charge of attempted armed burglary of a dwelling, which was the same degree felony as the offense of which Petitioner was convicted, and also was an option on the verdict form (Ex. D).[6]  This federal

---

[5] As previously discussed, under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

[6] Florida's burglary statutes defines burglary as follows:

(b) For offenses committed after July 1, 2001, "burglary" means:

1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein . . .
.

court is bound by the state court's determination that the evidence was sufficient to survive a motion for JOA as to an offense of which the jury could have convicted Petitioner, and which carried the same penalties.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  In light of this determination, Petitioner failed to demonstrate he was prejudiced by counsel's failure to argue the motion for JOA differently.

Petitioner failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on Ground Three.

B.    Ground One:  "(I.A.C.) [sic] failing to conduct adequate cross examination of State witnesses regarding motive to provide false testimony and by failing to present as asserted to jury in openign [sic] arguments [sic] evidence State witnesses had a motive to lie."

Petitioner states he told defense counsel prior to trial that Jamal Dixon and Davanta Robinson would likely testify falsely that he participated in the crimes, because they anticipated they would receive more lenient sentences if they did so (doc. 1 at 4–6).  Petitioner states he told counsel that Dixon and Robinson had entered guilty pleas in exchange for promised sentences in the range of probation to no more than ten (10) years in prison (*id.*).  Petitioner states that during opening statements, defense counsel told the jury that the evidence would show Petitioner was not involved in the crimes, and the witnesses had a motive to provide false testimony, specifically, they had been "promised things" in return for their testimony (*id.*).  Petitioner states defense counsel argued during closing arguments that the evidence demonstrated the witnesses had been promised something in exchange for their testimony, and counsel suggested the jury should weigh this fact in considering the credibility of Dixon and Robinson (*id.*).  However, Petitioner asserts counsel failed to elicit

---

(2) Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender:
. . . .
(b) Is or becomes armed within the dwelling, structure, or conveyance, with explosives or a dangerous weapon. . . .

Fla. Stat. § 810.02(1)(b), (2)(b).

testimony from either witness that they were motivated to testify falsely because their plea deals were predicated upon their testifying at Petitioner's trial, or they expected or were promised more lenient sentences if they testified (*id.*).  Petitioner asserts if counsel had asked each witnesses whether his plea deal would still be available if he did not testify at Petitioner's trial, each witness would have responded no (*id.* at 6).  He asserts if counsel had asked each witness whether he anticipated a lenient sentence in exchange for his testimony at Petitioner's trial, he would have responded yes (*id.*).

Respondent contends the state court's adjudication of this claim was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 16 at 9–15).

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue One in his Rule 3.850 motion (Ex. M at 3–10).  The state court adjudicated the claim as follows:

> **<u>Ground One</u>:  trial counsel failed to properly cross-examine two State's witnesses about their "motive" to testify falsely at trial.**
>
> Defendant claims that counsel was deficient for failing to question the State's witnesses Jamal Dixon and Davanta Robinson about the "motive" that they had to testify falsely; specifically, that these co-defendants had accepted plea offers conditioned on their testimony in Defendant's trial, and that they expected to receive a more lenient sentence due to their testimony.
>
> The trial transcript excerpts in Defendant's motion demonstrate that it was brought to the attention of the jury repeatedly that these two witnesses had made a deal with the State in their own cases in exchange for their testimony at Defendant's trial.[FN 2]  Therefore, the jury was aware that these two witnesses may have had an ulterior motive for testifying.  However, this does not prove that their testimony was necessarily false.  Moreover, counsel was not deficient for failing to cross-examine these two witnesses to any further extent about their plea bargains, as it would not have changed the outcome of the proceedings.  Defendant is not entitled to relief on this claim.
>
> [FN 2:  reference to excerpts from trial transcript]

(Ex. N).  Petitioner argued the issue on appeal to the First DCA (Ex. P).  The appellate court affirmed the lower court's decision without written opinion (Ex. R).

The trial transcript demonstrates that through Mr. Dixon's testimony, the jury was made aware that (1) he was currently in jail on the same charges for which Petitioner was being tried, (2) he entered a guilty plea in his criminal case, (3) he entered his guilty plea in exchange for a promise that his sentence would not be more than ten (10) years, and (4) he entered a guilty plea because he was guilty of the charges (Ex. C at 84–85).  Through Mr. Robinson's testimony, the jury was made aware that (1) he was currently in jail on the same charges for which Petitioner was being tried, (2) he entered a guilty plea to the charges, (3) he entered his guilty plea in exchange for a promise that his sentence would not be more than ten (10) years, (4) he received the plea deal because he was cooperating with the State, and (5) the plea deal left open the possibility he could receive a sentence of less than ten (10) years (*id.* at 92–93, 96–97).  The jury could infer from this testimony that Jamal Dixon and Davanta Robinson were motivated by self-interest to implicate Petitioner in the crimes.  Indeed, defense counsel argued to the jury that both witnesses were motivated to implicate other persons, such as Petitioner, in the crimes by the hope they would receive leniency with regard to their own sentences (*id.* at 123–24, 125, 126).

Further, Petitioner has not proffered any evidence, in the form of affidavits, deposition testimony, or reliable sources, of how Mr. Dixon and Mr. Robinson would have responded if defense counsel had asked the questions Petitioner faults him for not asking.  There is no evidence that either witness would have responded "no" if defense counsel had asked if his plea deal would still be available if he did not testify at Petitioner's trial; nor is there any evidence that either witness would have responded "yes" if defense counsel had asked if he anticipated a lenient sentence in exchange for his testimony.  Petitioner's speculative assertions as to how each witness would have answered are insufficient to demonstrate defense counsel was deficient for failing to ask them.  His speculative assertions are likewise insufficient to demonstrate a reasonable probability the jury would have had reasonable doubt as to his guilt if defense counsel had asked the questions Petitioner faults him for not asking.

Petitioner failed to demonstrate by clear and convincing evidence that the state court's factual findings were unreasonable, or that the state court unreasonably applied the Strickland standard in denying his claim.  Therefore, he is not entitled to federal habeas relief on Ground One.

      C.     Ground Two:  "(I.A.C.) [sic] failing to req. [sic] jury instruction for accomplice."

Petitioner asserts the sole evidence relied upon by the State was the testimony of Jamal Dixon and Davanta Robinson (doc. 1 at 6–7).  He states the theory of defense was that he was not present when the crimes were committed, and Dixon and Robinson were lying about his participation in the crimes (*id.*).  Petitioner contends defense counsel should have requested a jury instruction regarding testimony of accomplices, which would have put the jury on notice that they should consider the testimony of Mr. Dixon and Mr. Robinson with great caution and were permitted to doubt the credibility of their testimony (*id.*).  Petitioner asserts if counsel had requested the accomplice instruction, the trial court would have given it, and there is a reasonable probability the jury would have acquitted him of the charges (*id.*).

Respondent contends the state court's adjudication of this claim was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 16 at 15–19).

      1.     Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

      2.     Federal Review of State Court Decision

Petitioner raised this claim as Issue Two in his Rule 3.850 motion (Ex. M at 10–12).  The state circuit court adjudicated the claim as follows:

**Ground Two:  trial counsel failed to request a jury instruction.**

Defendant claims that counsel should have requested that the Court instruct the jury that they should receive the accomplice or co-defendant testimony with great caution.

The jury was instructed to consider if the witnesses had "been offered or received any money, preferred treatment or other benefit" in exchange for their testimony.[FN 3]  Additionally, the jury was instructed that they were allowed to draw their own conclusions about witnesses, and could believe or disbelieve all or any part of the evidence or the testimony of any witness.  It appears that the

co-defendants appeared in jail attire,[FN 4] and they admitted their involvement in the instant offenses.  Accordingly, the jury was aware that the credibility of these witnesses should be considered carefully.

The Court finds that counsel was not deficient for failing to request any further jury instruction, and that Defendant has also failed to prove that he was prejudiced by any action or inaction by counsel.  "The likelihood of a different result must be substantial, not just conceivable." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 792 (2011).  Therefore, Defendant is not entitled to relief on this claim.

[FNS 3, 4:  references to excerpts from trial transcript]

(Ex. N).  Petitioner argued the issue on appeal to the First DCA (Ex. P).  The appellate court affirmed the lower court's decision without written opinion (Ex. R).

The record demonstrates the trial court instructed the jury as follows regarding weighing the evidence:

In weighing the evidence, it is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.  You may find some of the evidence not reliable or less reliable than other evidence.  You should consider how the witnesses acted as well as what they said.  Some things you should consider or [sic] as follows.  First, did the witness seem to have an opportunity to see and know the things about which the witness testified? Second, did the witness seem to have an accurate memory?  Third, was the witness honest and straightforward in answering the attorneys' questions?  Four, did the witness have some interest in how the case should be decided?  Fifth, does the witnesses [sic] testimony agree with the other testimony and other evidence in the case?  Six, has the witness been offered or received any money, preferred treatment or other benefit in order to get the witness to testify?  Seven, had any pressure or threat been used against the witness that affected the truth of the witness' testimony?  Eight, did the witness at some other time make a statement that is inconsistent with the testimony he or she gave in court? You may rely upon your own conclusion about the witness.  A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.

(Ex. C at 144–45). Defense counsel argued to the jury that Jamal Dixon and Davanta Robinson were "blatant liars," and that their testimony was not reliable or credible, because they were motivated by self interest to implicate others in the crimes, and their versions of what occurred on the night of the crimes varied (*id.* at 124–28).

Florida's standard jury instruction regarding weighing the evidence, which is the instruction the trial court provided in Petitioner's case, includes an additional instruction regarding accomplices, which may be given if one of the parties requests it.  That additional instruction provides:

> *Accomplices and Informants.*
>
> You must consider the testimony of some witnesses with more caution than others. For example, a witness who [claims to have helped the defendant commit a crime] [has been promised immunity from prosecution] [hopes to gain more favorable treatment in his or her own case] may have a reason to make a false statement in order to strike a good bargain with the State.  This is particularly true when there is no other evidence tending to agree with what the witness says about the defendant. So, while a witness of that kind may be entirely truthful when testifying, you should consider [his] [her] testimony with more caution than the testimony of other witnesses.  However, if the testimony of such a witness convinces you beyond a reasonable doubt of the defendant's guilt, or the other evidence in the case does so, then you should find the defendant guilty.

Fla. Standard Jury Instructions in Criminal Cases, Part One:  Gen. Instructions, Chp. 3, Final Charge to the Jury 3.9.

The record demonstrates the trial court instructed the jury that (1) they may find some of the evidence not reliable, (2) they should   consider   whether each witness was honest and straightforward in answering questions, (3) they should consider whether each witness had some interest in how the case should be decided, (4) they should consider whether each witness was offered or received any preferred treatment or other benefit in order to get the witness to testify, (5) whether the witness at some other time made a statement that was inconsistent with the testimony he gave in court, and (6) they may believe or disbelieve all or any part of the testimony of any witness.  The record also demonstrates that defense counsel urged the jury to reject Jamal Dixon's and Davanta Robinson's testimony as wholly incredible.  Although the additional accomplice instruction would have instructed the jury that they should consider Jamal Dixon's and Davanta Robinson's testimony with more caution than other witnesses, there was no other evidence or witness testimony regarding who participated in the planning and commission of the crimes. Further, if the court had given the accomplice instruction, it would have included the reminder that an accomplice may be entirely truthful when testifying, and if the testimony of an accomplice convinced them beyond a reasonable doubt of Petitioner's guilt, then they should find Petitioner

guilty.  *See* Fla. Standard Jury Instructions in Criminal Cases, Part One:  Gen. Instructions, Chp. 3, Final Charge to the Jury 3.9.

Petitioner has not shown Florida courts' determination that he failed to satisfy the <u>Strickland</u> standard was based on an unreasonable determination of the facts or was an unreasonable application of <u>Strickland</u>.  Petitioner has not shown that no fairminded jurist could have concluded, as the Florida courts did, that he failed to carry his burden of showing that his counsel performed incompetently by failing to request the accomplice instruction, and if the instruction had been requested and provided to the jury there is a reasonable probability of a different outcome at trial. Petitioner has not shown that the evidence on the deficient performance and prejudice questions is so one-sided in his favor that the answer is, as the Supreme Court has phrased it, "beyond any possibility for fairminded disagreement."  <u>Harrington</u>, 131 S. Ct. at 787.  He has not shown that the Florida courts' determination of the ineffective assistance of counsel issue was so unjustified that it "was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87; *accord* <u>Bobby v. Dixon</u>, —–U.S. —–, 132 S. Ct. 26, 27, 181 L. Ed. 2d 328 (2011) (per curiam); *see also* <u>Holsey v. Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230, 1258 (11th Cir. 2012).  Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

## IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is

an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 5<u>th</u> day of March 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

     **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**